34 C.C.P.A.(Patents)

## In re HASKELL.

### Patent Appeals No. 5185.

Court of Customs and Patent Appeals.
June 27, 1946.

Rehearing Denied Sept. 30, 1946.

Blair, Curtis & Hayward, of New York City, and Paul A. Blair, of Washington, D. C. (Edward G. Curtis, Charles C. Ladd, and Marshall M. Holcombe, all of New York City, of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

GARRETT, Presiding Judge.

The Board of Appeals of the United States Patent Office affirmed a decision of the Primary Examiner rejecting claims 11 to 14, inclusive, of an application for the reissue of appellant's patent No. 2,264,037, dated November 25, 1941. Claims 1 to 10, inclusive, the original patent claims, were allowed. From the decision of the board this appeal was taken.

Claim 11 is illustrative of the subject matter of the rejected claims and reads as follows: "11. The method of selectively sealing more permeable oil depleted strata exposed to a well without sealing less permeable oil strata exposed to said well comprising, injecting a fluid vehicle carrying a substance into the well under such a low pressure and resulting slow flow that the fluid vehicle and substance enter the more permeable oil depleted sand formations in preference to the less permeable oil producing sand formations, and said substance being adapted to obstruct the flow of fluid through the more permeable sand formations entered by said fluid vehicle and substance without obstructing the flow of fluid through the less permeable sand formations not entered by said fluid vehicle and substance."

The involved application and the patent for which reissue is sought relate to the production of oil from wells which are nearly depleted. In such wells it had been the practice in the art to drill holes at some distance therefrom, called "inlet wells," in which water under pressure forced the oil in the sands between the producing and the inlet wells into the shaft of the producing well. For the reason that frequently oil sands occur in several strata and are of different permeability, when oil has been thus forced by water pressure from the sands water would follow and enter the production well in such quantity as to make further operations impracticable.

In order to procure as much oil as possible from strata of different permeability appellant invented a method comprising a selective plugging off of the exhausted strata. His method comprised the forcing into the inlet well or wells of a slurry containing particles small enough to enter the pores of the most permeable stratum, but too large for the pores of strata less permeable. The slurry, which becomes a solid material, thus is used first to block off the more permeable sand, and as each of the successively less permeable sands is treated in this fashion substantially all of the oil may be recovered.

This method is known as an "artificial drive."

It appears that at times water, either by nature or introduction into the ground around the producing well at a high enough level, is forced by gravity through the sands into the producing well. That method is known as a "natural drive."

No prior art was cited, but reference was made to the specification of appellant's original patent heretofore mentioned. The claims were rejected on the ground that they are not drawn to the invention of the original patent, and that failure to obtain those claims therein was due to deliberate election and not to inadvertence.

The issues here are whether or not appellant's original application, which had in it claims 1, 2, 3, and 7, later canceled by appellant, was deliberately confined to an ar-

tificial drive, and whether those claims can be construed to include a natural drive as alleged by appellant, and if so whether their cancellation was a deliberate abandonment of the subject matter of the involved claims.

It is clear that neither the original application of appellant nor the claims thereof contain any express disclosure of a natural drive. Appellant does not so contend. He, in effect, argues that since they do not expressly exclude the natural drive, such meaning should be read into them.

The original application contained only one embodiment of appellant's invention and that was for a method of plugging the strata or layers of sand through an intake well by means of an artificial drive process. All of the allowed claims were thus limited. It may be noted that the claims on appeal call for the plugging of sands through the producing well.

In support of his contention that "the original disclosure was not limited to the plugging of an intake well in an artificial drive process" appellant depends on the scope of the original canceled claims. They read as follows:

"1. The method of *driving oil through subterranean strata* having different permeabilities that includes *successively forcing a fluid through* and *a slurry into the* strata in the order of their reduced permeabilities.

"2. The method *of driving oil through subterranean strata* having different permeabilities that includes *forcing fluid through the stratum* having the greatest permeability *to drive the oil therethrough, forcing a slurry into the pores of said stratum* after it has been freed of oil to seal the same, and thereafter *forcing fluid* through a stratum having less permeability.

"3. The method of *driving oil through subterranean strata* having different permeabilities that includes *driving the oil* through all of the strata by means of fluid under pressure and *driving a slurry* into each successive stratum as it is freed of oil to seal the same.

"7. The method of recovering oil from subterranean strata having different permeabilities and located between a producing well and an inlet well that includes *driving the oil from the strata* into the producing well by means of fluid under pressure, and sealing the producing well against the entry of such fluid by incorporating a slurry in each successive stratum as it is freed of oil." (Italics ours.)

Contrary to the contention of appellant, the Primary Examiner held, and his reasoning was followed by the board, that steps in those claims such as "driving oil," and "forcing of fluid," require positive action by the operator and may not be met by merely permitting natural forces to operate. It is apparent to us that that holding of the tribunals below was proper. We cannot understand how "driving oil through a subterranean strata" and "successively forcing a fluid through and a slurry into the strata" could indicate anything but positive action. Moreover, it may be noted that canceled claim 7 expressly states that the strata is "located between a producing well and an inlet well." Appellant argues that the last clause in that claim setting out the "sealing [of] the producing well against the entry of such fluid" is proof that he is entitled to the allowance of the here rejected claims by reason of such disclosures. However, that claim must be read in its entirety and when so read the sealing of the producing well must be a sealing of the stratum by means of the slurry under pressure from the inlet well.

Appellant now seeks to have allowed claims for sealing the strata through the shaft of the producing well. Since this cannot reasonably be said to be disclosed in appellant's original application, we hold, as did the tribunals below, that the rejection of claims 11 to 14 was proper. The decision in U. S. Industrial Chemicals, Inc. v. Carbide & Carbon Chemicals Corp., 315 U.S. 668, 62 S.Ct. 839, 86 L.Ed. 1105, relied upon by the examiner, in our opinion, is in point.

Since we hold that the rejected claims do not read on appellant's original disclosure it is not necessary to discuss any other issue.

For the reasons heretofore given the decision of the Board of Appeals is affirmed.

Affirmed.