**In the Matter of the Application of Ronald P. ROWAND and Harry William La Rose, Jr.**

**Patent Appeal No. 75–549.**

United States Court of Customs and Patent Appeals.

Oct. 23, 1975.

Louis Bernat, James R. McBride, Morgan L. Fitch, Jr., Fitch, Even, Tabin & Luedeka, Chicago, Ill., for appellants.

Joseph F. Nakamura, Sol., Jack E. Armore, Washington, D. C., for U. S. Patent and Trademark Office.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

RICH, Judge.

This appeal is from the decision of the Patent and Trademark Office (PTO) Board of Appeals affirming the rejections of claims 6–10, all the claims in application serial No. 61,417, filed August 5, 1970, for reissue of appellants' Patent No. 3,166,688, issued January 19, 1965, entitled "Polytetrafluoroethylene Tubing Having Electrically Conductive Properties." The application is a division of application serial No. 802,295, filed February 14, 1969, for reissue of the same patent. The rejections were made under 35 U.S.C. §§ 251, 102, 103, and under the doctrine of interference estoppel. We affirm on the § 251 rejection.

*The Invention*

Appellants' brief describes their invention as a method for preparing polytetrafluoroethylene (Teflon) tubing having an electrically conductive inner portion

formed from a mixture of "natural," i.e., unadmixed, polytetrafluoroethylene and electrically conductive particles, preferably carbon black. We need not go beyond the description of the method in claim 6 of the application, the only independent claim:

6. A method of forming a tube of polytetrafluoroethylene and the like for conducting fluids under pressure and including means for discharge of internal static electricity to the ends of the tube and grounding the same from the tube interior at said ends in order to maintain the polytetrafluoroethylene tubing performance characteristics, comprising the steps of mixing natural polytetrafluoroethylene with electrically conductive particles such that the particles are uniformly dispersed throughout the polytetrafluoroethylene in electrically conductive relation, forming a cylindrical preform having a substantially annular conformation from end to end by filling an inner portion thereof with said mixture and an outer portion thereof surrounding the inner portion exteriorly with natural polytetrafluoroethylene, relatively nonconductive in character, and extruding said preform into a thin wall tubing with an integral polytetrafluoroethylene wall structure for containing fluids under pressure uniformly within said tubing.

It is significant that the appealed claims are not directed to the tubing itself. Appellants' patent No. 3,166,688 contained claims solely to tubing. That patent was placed in interference with an application of Slade, serial No. 196,-598, filed May 22, 1962, which copied all five of the claims in appellants' patent. Priority was awarded adversely to appellants as to all the claims in their patent. (The Slade application issued as patent No. 3,473,087, on October 14, 1969. Slade was used as prior art by the PTO in the § 102 and § 103 rejections.)

## The Rejections

The rejection under 35 U.S.C. § 251 was made on several grounds, among which was the ground that "there is nothing in the original disclosure that would lead one to believe that Applicants intended to secure or claim an invention involving the method steps of making a tube." As authority for this ground of rejection, the examiner pointed to "the broad premise of *U. S. Chemicals Co. v. Carbide Corp.*, 315 U.S. 668, 62 S.Ct. 839, 86 L.Ed. 1105,[1] wherein it was stated that 'It must appear from the face of the instrument that what is covered by the reissue was intended to have been covered and secured by the original.'" The board did not specifically agree with the examiner's reasoning that the absence of a limitation of the patent claims in the reissue claims was a proper ground for rejecting the claims as "not being for the same invention as the original patent." Rather, the board provided its own rationale, which was that the method claims "are drawn to a different invention" because "the article defined in the claims of the original patent may be made in many ways."

## OPINION

Since determining compliance with § 251 is the first order of business in examining a reissue application, *In re Clark*, 522 F.2d 623 (CCPA 1975), and since, as indicated below, we agree with this ground of rejection, it is not necessary to describe in detail or discuss the remaining grounds of rejection.

The broad premise of *U. S. Industrial Chemicals, Inc. v. Carbide and Chemicals Corp.*, supra, was reiterated by this court in *In re DeJarlais*, 43 CCPA 900, 233 F.2d 323 (1956). This rejection can be restated as one on the broad ground that the appealed claims are not "for the invention disclosed in the original patent," as required by § 251.

1. The full title of this case is *United States Industrial Chemicals, Inc. v. Carbide & Carbon Chemicals Corp.*, 315 U.S. 668, 62 S.Ct. 839, 86 L.Ed. 1105 (1942).

As the examiner pointed out, *nothing* in the original patent would lead one to believe that appellants intended to claim the method invention which they now claim in this reissue application. The title of the patent is "Polytetrafluoroethylene Tubing Having Electrically Conductive Properties." The first sentence of the specification recites: "This invention relates to *tubing* extruded from polytetrafluoroethylene." (Emphasis ours.) The stated objects and advantages of the invention do not refer to a method as being part thereof (all emphasis ours):

Accordingly where the performance characteristics desired for a particular *tubing* are important the opportunity for inspection afforded by "white" Teflon *tubing* is of prime importance. This invention is designed to preserve to a large degree the advantages of an opportunity for visual inspection and thus more adequate control in connection with overall inspection and testing procedures. At the same time the *tube* is designed to provide a definite path for discharge of static electricity from the *tube* interior. This path is preferably confined to the interior portion of the *tubing* wall so that the remaining outer portion of the wall forms an excellent dielectric barrier against arcing to the conventional wire braid armored sheath.

We also note that in the patent, in its very brief description of the method for fabricating composite Teflon tube, which appellants now assert to be their invention, they state:

As will be appreciated by *those skilled in the art* a cylindrical "preform" having concentrically located portions of Teflon material, with the inner portion admixed with a suitable "filler" as will be explained, may be inserted in a ram type extruder and the raw tubing formed thereby with subsequent heating and sintering steps *in accordance with known practices* so as to obtain a finished extruded Teflon tube product. [Emphasis ours.]

Appellants argued at oral hearing that they considered the tubing claims of the original patent to be adequate protection for the method they contend was also their invention. This erroneous belief is allegedly an adequate basis under § 251 for a reissue. Determining what protection appellants intended to secure by their original patent for the purposes of § 251 is an essentially factual inquiry confined to the *objective* intent manifested by the original patent. What appellants may have believed before they lost the interference cannot affect the analysis.

We agree with the board that there is nothing in the original patent evidencing that appellants intended to claim a method of making tubing or that appellants considered the method now claimed to be their invention. The decision of the board is *affirmed.*

*Affirmed.*

