**Application of Dennis E. MEAD.**

**Appeal No. 78–524.**

United States Court of Customs and Patent Appeals.

June 30, 1978.

See also 569 F.2d 1128.

James M. Wetzel, John H. Moore, Chicago, Ill., attys. of record, for appellant.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents, Gerald H. Bjorge, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

BALDWIN, Judge.

This appeal is from the decision of the Patent and Trademark Office (PTO) Board of Appeals (board) affirming the rejection

under 35 U.S.C. § 251 of claims 4, 9, and 10 of the application serial No. 572,357 filed April 28, 1975 entitled "Vibratory Pile Feeder." The application is a continuation of serial No. 393,539 filed August 31, 1973 and is for reissue of appellant's U.S. Patent No. 3,667,590 issued June 6, 1972.[1] Reissue claims 1–3 (which broaden original claims 1–3) stand allowed. We affirm.

## Background

### 1. History at the PTO

The original application, serial No. 273, filed on January 2, 1970, had 25 claims. By amendment on May 21, 1971, claims 26–46 were substituted for claims 1–25, claim 26 corresponding to original claim 1. In a second amendment, dated September 28, 1971, claims 26–46 were cancelled[2] and claims 47–49 were substituted, corresponding to claims 22, 24 and 25. Claims 47–49 were allowed, and renumbered as 1–3, and issued in patent No. 3,667,590 on June 6, 1972.[3]

Reissue application serial No. 393,539 was filed August 31, 1973. It broadened claims 1–3 of the patent, and added claims 4 and 5. In response to a rejection for an insufficient reissue declaration, the first declaration by the attorney then of record, Young, was filed on September 16, 1974, setting forth facts concerning when and how the errors

---

**1.** The patent was granted on application serial No. 273 filed January 2, 1970. The real party in interest is Lipe-Rollway Corporation.

**2.** Claim 26 was rejected under 35 U.S.C. § 102 as being anticipated by a Danish patent to Garben. It reads:

26. A vibratory feeder for moving work objects toward a destination, said feeder comprising:

(a) an element forming a path extending in the direction of feed toward said destination;

(b) means for vibrating said element in a motion having a vertical component;

(c) pile material carried on the upper surface of said element;

(d) said pile material having upstanding bristles that are straight and parallel filaments of uniform size with tips evenly arrayed to form a feed surface extending along said path;

(e) said bristles being uniformly inclined toward said direction of feed;

(f) said bristles being dense enough and strong enough to support said work objects on said bristle tips without said bristles being crushed down under the weight of said work objects; and

(g) said bristles being sufficiently resilient relative to said work objects to flex downward and toward said direction of feed under the weight of said work objects during upward movement of said element and to spring back upward during downward movement of said element.

**3.** The original claims read:

1. A vibratory feeder comprising:

(a) an element extending in the direction of feed;

(b) means for vibrating said element;

(c) pile material carried on said element;

(d) said pile material having generally parallel bristles;

(e) said bristles being dense enough and strong enough so the tips of said bristles support objects to be fed;

(f) said bristles resilient relative to said objects to be fed;

(g) said bristles being inclined toward said direction of feed;

(h) said pile material including other generally parallel bristles having an inclination different from said direction of feed;

(i) said other bristles being interspersed with said feeding bristles inclined in said direction of feed, and said other bristles are taller and less stiff than said feeding bristles so said other bristles establish another direction of feed for lighter objects supported on the tips of said feeding bristles proceeding in said direction of feed.

2. A vibratory feeder comprising:

(a) an element extending in the direction of feed;

(b) means for vibrating said element;

(c) pile material carried on said element;

(d) said pile material having generally parallel bristles;

(e) said bristles being dense enough and strong enough so the tips of said bristles support objects to be fed;

(f) said bristles being resilient relative to said objects to be fed;

(g) said bristles being inclined toward said direction of feed;

(h) said pile material including a porous fabric backing; and

(i) fluid dispersing means for sending fluids to said fabric backing material and into the region of said bristles.

3. A vibratory feeder comprising:

(a) an element extending in the direction of feed;

(b) means for vibrating said element;

(c) pile material carried on said element;

(d) said pile material having generally parallel bristles;

alleged to render the patent inoperative occurred.[4] In addition, claim 5 was cancelled, and claims 6–9 added. Claims 1–3 and 6–8 were allowed and claims 4 and 9 rejected.[5] Subsequently, an amendment filed (but not entered) added claim 10.[6]

In order to continue prosecution of claims 4, 9 and 10, continuation application serial No. 572,357 (the present application) was filed August 25, 1975, including claims 1–5 from the parent application. By preliminary amendment, claim 5 was cancelled, and claims 6–10 from the reissue application added. In response to another rejection of claims 4, 9 and 10 for an insufficient reissue declaration, a second declaration of Young was filed on November 21, 1975 containing statements identical to those of the first. Claims 1–3 and 6–8 were then allowed, but claims 4, 9 and 10 were finally rejected under 35 U.S.C. § 251[7] "as not

4. Young's declaration alleged two errors:

> (e) said bristles being dense enough and strong enough so the tips of said bristles support objects to be fed;
> (f) said bristles being resilient relative to said objects to be fed;
> (g) said bristles being inclined toward said direction of feed;
> (h) said pile material including a backing material;
> (i) said bristles being hollow and extending through said backing material; and
> (j) fluid dispersing means arranged for sending fluid through said hollow bristles.

The second error, the absence of claims directed to the preferred relationship between bristle orientation and the direction of vibratory movement, was discovered as a result of the prosecution of a corresponding patent application in Japan. A reference, Japanese patent application 29098/69 came to the attention of Mr. Stephens [an earlier attorney of record] a few days before May 14, 1973, when Mr. Stephens wrote to the assignee to confirm a telephone report of May 11, 1973 regarding this Japanese reference. Prior to discovery of the Japanese reference, it was intended to obtain patent protection on the relationship between bristle angle and vibration angle from a subsequent U.S. patent application filed more than one year after the publication date of the Japanese reference. This approach was the reason for accepting the extremely narrow claims in U.S. patent 3,667,590, inasmuch as claims directed to the relationship between inclination angles was a primary focus of the subsequent U.S. patent application.

The mistake which occasioned the specified error was a mistake about the state of the art, in that neither the applicant nor his counsel were aware of the Japanese reference, the existence of which was highly detrimental to the course of action then being pursued.

5. Claims 4 and 9 were rejected under 35 U.S.C. § 103 over Japanese patent No. 29,098, dated November 1969.

6. Claims 4, 9 and 10 read:

> 4. A vibratory feeder comprising:
> a. an element extending in the direction of feed;
> b. feed-promoting material carried on said element;
> c. said feed-promoting material having generally parallel resilient members;
> d. said resilient members having tips and being dense enough and strong enough so that the tips thereof support objects to be fed;
> e. said resilient members being resilient relative to said objects to be fed;
> f. said resilient members being inclined in a vertical plane which extends toward said direction of feed; and
> g. means for vibrating said element in an inclined direction which lies in the same quadrant in said vertical plane as the inclination angle of the resilient members.
> 9. A vibratory feeder according to claim 4 wherein said resilient members are bristles.
> 10. A vibratory feeder comprising:
> a. an element extending in the direction of feeds;
> b. feed-promoting material carried on said element;
> c. said feed-promoting material having generally parallel resilient bristle members;
> d. said resilient bristle members having tips and being dense enough and strong enough so that the tips thereof support objects to be fed;
> e. said resilient members being resilient relative to said objects to be fed;
> f. said resilient bristle members being inclined toward said direction of feed; and
> g. means for vibrating said element in a direction which is inclined between vertical and horizontal toward said direction of feed.

7. § 251, first paragraph reads:

> § 251. Reissue of defective patents
> Whenever any patent is, through error without any deceptive intention, deemed wholly or partly inoperative or invalid, by

being for matter which might have been claimed in the original patent," being directed to an independent and distinct invention not claimed in the original patent such that the patentee had not claimed less than he had a right to claim.

Appellant argued before the board that: (1) the subject matter of claims 4, 9 and 10 was disclosed in the original patent, and the original specification is clear in its preference for the invention described in those claims; and (2) whether or not the subject matter of claims 4, 9 and 10 is directed to an invention independent and distinct from that claimed in the original patent, applicant had a *right* to claim the invention of the rejected claims in the original patent.

In a reply brief refused entry by the Commissioner, appellant further argued that the objective intent to make the rejected claims manifested by the original patent could not be determined from Young's after-the-fact declarations.

The board sustained the § 251 rejection in toto, finding, on the basis of Young's second declaration, that "the subject matter of the appealed claims was never intended to be claimed in the original patent but rather in a subsequent application," and therefore, the patent was not inoperative by reason of error. A double-patenting rejection based on Mead patent No. 3,995,733 was withdrawn upon a showing that the claims were not for the same invention.

## 2. *History at this court*

On appeal to this court, appellant moved to supplement the record "by insertion of his original patent No. 3,667,590 and its file history, and reissue application serial No. 393,539 (now abandoned) and its filed history * * *," *In re Mead*, 569 F.2d 1128, 1129, 196 USPQ 811, 812 (Cust. & Pat.App. 1978), alleging " 'intent to claim' was the dispositive issue before the board * *." Id. at 1130, 196 USPQ at 813. The motion

was granted on the basis that those materials "were required to be 'carefully studied' by the examiner," and the board, as "an integral element" of the PTO "has before it the 'evidence produced before the Patent and Trademark Office.' " Id. at 1129, 196 USPQ at 812.

Appellant now argues that: (1) the original patent and its file history manifested an intent by the patentee to claim the relationship between bristle angle and vibration angle in the vibratory feeder recited in rejected claims 4, 9 and 10, and (2) the objective intent to claim that subject matter, having been manifested by the original patent and file history, is not negated by Young's later subjective declaration.

The PTO responds that: (1) the original patent and its file history, including claim 26, were not called to the attention of the examiner or the board, except in the non-entered reply brief, (2) appellant did not contest below the examiner's or the board's reliance on Young's declaration, (3) appellant's new evidence and arguments are not properly before this court, (4) cancelled claim 26 is substantially identical to claims 4, 9 and 10, and (5) the cancellation of claim 26 must be construed in light of Young's declaration as a voluntary election by appellant of the independent and distinct invention claimed in the original patent.

### Issue

The issue is whether patent No. 3,667,590 is partly inoperative: (1) by reason of the patentee claiming less than he had a right to claim in the patent, and (2) through statutory error without deceptive intent.

### OPINION

#### I

The examiner concluded that claims 4, 9, and 10 were directed an an independent and

reason of a defective specification or drawing, or by reason of the patentee claiming more or less than he had a right to claim in the patent, the Commissioner shall, on the surrender of such patent and the payment of the fee required by law, reissue the patent for

the invention disclosed in the original patent, and in accordance with a new and amended application, for the unexpired part of the term of the original patent. No new matter shall be introduced into the application for reissue.

distinct invention not claimed in the original patent on the basis they "require a specific vibrating means which the claims of the original patent do not require and the claims of the original patent require fluid dispensing means or two different types of bristles which claims 4, 9 and 10 do not require."

■ The entire disclosure, not just the claims, is considered in determining what the patentee intended to claim and what invention the patent discloses. *In re Handel*, 312 F.2d 943, 948, 50 CCPA 918, 924, 136 USPQ 460, 464 (1963). A review of the record shows that the original and the appealed claims are directed to different embodiments of the invention as disclosed in the specification, not to patentably distinct inventions.[8] Therefore, with respect to the subject matter of the appealed claims, the original specification satisfies the requirements of § 112, first paragraph, such that appellant had the right to claim such subject matter, as required by § 251.

■ The examiner also concluded that the Young declaration negated the possibility that appellant intended to secure protection of the appealed subject matter by the original patent. Such a subjective test, based on "intent to claim," is not relevant to the determination whether appellant claimed less than he had a right to claim. The proper test is that set forth in *In re Rowand*, 526 F.2d 558, 560, 187 USPQ 487, 489 (Cust. & Pat.App.1975), requiring "an essentially factual inquiry confined to the *objective* intent manifested by the original patent." (Emphasis in original.)

The concept of "intent to claim" originated in *Parker and Whipple Co. v. Yale Clock Co.*, 123 U.S. 87, 8 S.Ct. 38, 31 L.Ed. 100 (1887). The governing statute in that case, an infringement suit based on a reissue patent, was § 53 of the Act of July 8, 1870, c. 230, 16 Stat. 205, Rev.Stat. § 4916, which provided:

> [W]henever any patent is inoperative or invalid, by reason of a defective or insufficient specification, or by reason of the patentee claiming as his own invention or discovery more than he had a right to claim as new, if the error has arisen by inadvertence, accident, or mistake, and without any fraudulent or deceptive intention, the commissioner shall * * * cause a new patent for the *same invention*, and in accordance with the corrected specification, to be issued to the patentee. [Emphasis added.]

Citing *Seymour v. Osborne*, 78 U.S. 516 (11 Wall.), 20 L.Ed. 33 (1870), the Court stated at 123 U.S. 98–99, 8 S.Ct. 44:

> [T]he court adheres strictly to the view, that, under the statute, the commissioner has no jurisdiction to grant a reissued patent for an invention substantially different from that embodied in the original patent * * *. [T]he things * * * to be included [in the new description and new claims] are only the things which properly belonged to the invention as embodied in the original patent; that what that invention was is to be ascertained by consulting the original patent; and that, while the new description may properly contain things which are indicated in the original specification, drawings or patent-office model, (though not sufficiently described in the original specification,) it does not follow that what was indicated in the original specification, drawings or patent-office model is to be considered as a part of the invention, unless the court can see, from a comparison of the two patents, that the original patent embod-

---

8. The specification states:

Fig. 1 is a fragmentary and partially schematic perspective view of a feeder according to the invention * * *.

As shown in Fig 1, a simplified, schematic feeder 10 includes an element 11 extending in the direction of feed * * * and a vibrator or motor 12 for vibrating element 11 * * *

\* \* \* \*

The motion applied to element 11 by vibrator 12 can be in many different planes * * *. Vibration in a vertical plane works quite well, and the plane of vibration can be satisfactorily inclined anywhere from vertical to horizontal, preferably in the quadrant including or similar to the inclination of bristles 14. [Emphasis added.]

SR 68-69

FIG. 1

ied, as *the invention intended to be secured* by it, what the claims of the reissue are intended to cover. [Emphasis added.]

*Parker* was cited by the Supreme Court in *United States Industrial Chemicals, Inc. v. Carbide and Carbon Chemicals Corp.,* 315 U.S. 668, 676, 62 S.Ct. 839, 843, 86 L.Ed. 1105, 53 USPQ 6, 9–10 (1942) for the proposition that:

> If there be failure of disclosure in the original patent of matter claimed in the reissue, it will not aid the patentee that the matter covered by the reissue was within his knowledge when he applied for his original patent. And it is not enough that an invention might have been claimed in the original patent because it was suggested or indicated in the specification. It must appear from the face of the instrument that what is covered by the reissue was intended to have been covered and secured by the original. [Footnotes omitted.]

Thus, "intent to claim" arose from the requirement that the reissue be for the "same invention" as the original, i. e., that it cover what was "intended to have been covered" by the original. In *Handel, supra,* this court held that, although *Parker* and *Carbide* were decided prior to the Patent Act of 1952, which changed the wording of the reissue provision, the rule respecting consideration of the entire disclosure of the original patent remained unchanged. 312 F.2d at 948, 50 CCPA at 924, 136 USPQ at 464.

The broad premise of *Carbide* was cited by this court in *Rowand, supra,* in which appellant attempted to obtain by reissue claims to a method of making tubing, the tubing itself being the subject of the original claims. The only description of the method in the patent was one stated to be "in accordance with known practices," as "appreciated by those skilled in the art." Id. 526 F.2d at 560, 187 USPQ at 489. We stated there:

> Determining what protection appellants intended to secure by their original patent for the purposes of § 251 is an essentially factual inquiry confined to the *objective* intent manifested by the original

patent. \* \* \* \* [T]here is nothing in the original patent evidencing that appellants intended to claim a method of making tubing or that appellants considered the method now claimed to be their invention. [Emphasis in original.]

Id. at 560, 187 USPQ at 489. Thus, in *Rowand* and similar cases, "intent to claim" has little to do with "intent" *per se,* but rather is analogous to the requirement of § 112, first paragraph that the specification contain "a written description of the invention, and of the manner and process of making and using it." It is, as appellant urges, synonymous with "right to claim." The Young declaration, and appellant's arguments relating thereto, are therefore irrelevant to appellant's "right to claim."

## II

■ The board affirmed the examiner's rejection based on Young's declaration of appellant's intent to claim the appealed subject matter in some unspecified subsequent application. Similarly, the PTO's allegations of lack of error are based on Young's declaration, which, it is argued, proves that the subject matter of the appealed claims was never intended to be claimed in the original application, and therefore there was no error within the meaning of § 251.

Appellant's attempt on appeal to discredit the Young declaration is futile. The second Young declaration was submitted to specify the facts concerning when and how the errors alleged occurred and were discovered, and was accepted for that purpose by both the examiner and the board. Appellant now cannot complain because the declaration is being used for its intended purpose.

As is clear from the record, appellant's first attorney made a conscious choice *not* to file a continuing application claiming the appealed subject matter of claims 4, 9, and 10 during copendency with the application that matured into patent No. 3,667,590. Had there been copendency, appellant would not be faced with the present predicament. Apparently, the later application was planned to be filed within the one year

"grace" period permitted by the statute, during which time appellant's own patent No. 3,667,590 could not be cited against him as a statutory bar under § 102. Clearly, appellant did not know about the Japanese reference at the time the original patent issued. When his attorney made the conscious choice of breaking appellant's chain of copendency by letting the application issue, with the plan to claim in the subsequent application, he knew, or should have known, that there could exist intervening references (in this case, the Japanese reference) which could defeat patentability of the disclosed but unclaimed subject matter in the original patent. That intentional omission of the appealed subject matter from the original application combined with the plan to claim it in the subsequent application, does not constitute "error" under § 251 because to permit appellant to use the reissue statute in this manner would defeat the purpose behind the copendency requirement of §120 of the statute. *Cf. In re Orita*, 550 F.2d 1277, 1281, 193 USPQ 145, 149 (Cust. & Pat.App.1977). Therefore, the decision of the board is affirmed.

AFFIRMED.