**In re Godfrey Newbold HOUNSFIELD.**

**Appeal No. 82–593.**

United States Court of Appeals, Federal Circuit.

Feb. 14, 1983.

**32.** 28 U.S.C. § 1491.

Ivan S. Kavrukov, New York City, argued for appellant; Cooper, Dunham, Clark, Griffin & Moran, New York City, on brief.

Thomas E. Lynch, Associate Sol., U.S. Patent and Trademark Office, Washington, D.C., argued for the Commissioner of Patents and Trademarks; Joseph F. Nakamura, Sol., and Jere W. Sears, Deputy Sol., Washington, D.C., on brief.

Before FRIEDMAN, NICHOLS and BALDWIN, Circuit Judges.

FRIEDMAN, Circuit Judge.

This is an appeal from the decision of the Patent and Trademark Office Board of Appeals ("Board") affirming the rejection of certain claims in an application for reissue of a patent. The Board affirmed the examiner's rejection of the claims under 35 U.S.C. § 251 (1976), holding that the appellant had not intended to claim the subject matter of the claims in the original patent. The Board viewed such intent as required under section 251. We reverse.

## I.

This case involves a major development in medical diagnostic technique—the so-called "CT scanner"—which enables physicians to obtain through sophisticated X-ray technology a three-dimension picture of the human body. The device is complex, but in view of our disposition of the case, there is no occasion to describe it in detail.

The appellant received his first patent for the invention in December 1973, Patent No. 3,778,614 (the '614 patent), which detailed and claimed the basic method and apparatus of the CT scanner. The appellant obtained Patent No. 3,924,131 (the '131 patent) on December 2, 1975. This patent further specified the apparatus to be used in applying the general concepts in the '614 patent, and further defined the use of the machinery disclosed in the previous patents to produce more accurate results.

After the '131 patent issued, the appellant discovered a publication (by Kalos, et al.) which the appellant thought might constitute prior art, rendering the '131 patent wholly or partially invalid. The appellant accordingly filed the present reissue application on July 27, 1977.

The examiner rejected claims 7 through 11 of the reissue application (the only ones before us) for a number of reasons. The Board affirmed the rejection, but agreed with only one of the examiner's grounds for rejection. The Board held that 35 U.S.C. § 251 barred the claims because "the record makes it clear that it was not appellant's intention to claim the subject matter of claims 7 through 11 in the original ['131] patent."

## II.

Section 251 of Title 35 of the United States Code, upon which the examiner

based his rejection of claims 7 through 11 of the reissue application, provides in pertinent part:

> Whenever any patent is, through error without any deceptive intention, deemed wholly or partly inoperative or invalid ... by reason of the patentee claiming more or less than he had a right to claim in the patent, the Commissioner shall ... reissue the patent for the invention disclosed in the original patent, and in accordance with a new and amended application, for the unexpired part of the term of the original patent. No new matter shall be introduced into the application for reissue.

The Board did not affirm the rejection because there was no "error without any deceptive intention" in the '131 patent, because the reissue was sought for an invention other than the "invention disclosed in the original patent," or because "new matter" had been introduced into the reissue application. These were three of the grounds upon which the examiner had rejected the application. The Board, however, specifically disagreed with the examiner on the first two of these grounds and did not discuss the third. The Board held that the appellant's "believ[ing] the original patent to be wholly or partly inoperative or invalid because of a failure to distinguish over Kalos" constituted "error in obtaining the original patent," and that it could not sustain the examiner's position that "claims 7 through 11 are directed to an invention which is different than and patently distinct from the invention disclosed in the original ['131] patent."

The sole basis upon which the Board upheld the examiner's rejection of claims 7 through 11 was the Board's agreement with the examiner that the claims "are not in compliance with section 251 for lack of an objective intent to claim the subject matter of these claims in the original patent." It relied primarily upon two decisions of the Court of Customs and Patent Appeals, which it interpreted as establishing that

"intent to claim" is a separate and independent element required to establish entitlement to a reissue patent. *In re Rowand*, 526 F.2d 558, 187 USPQ 487 (Cust. & Pat. App.1975); *In re Mead*, 581 F.2d 251, 198 USPQ 412 (Cust. & Pat.App.1978).

Those cases, however, do not support or justify the gloss the Board placed upon the statutory language. Properly read, they treat "intent to claim" merely as one factor to be considered in determining whether the reissue application meets the requirements in section 251 that the defect in the original patent have resulted from "error without any deceptive intention," and that the reissue application be for the same "invention disclosed in the original patent."

In *Rowand*, the invention the original patent described was "tubing extruded from [Teflon]." The reissue was for "the method of forming a tube of [Teflon]." The court upheld the Board's rejection of the reissue application because "the appealed claims are not 'for the invention disclosed in the original patent,' as required by § 251." 526 F.2d at 559, 187 USPQ at 488. The court stated: "As the examiner pointed out, *nothing* in the original patent would lead one to believe that appellants intended to claim the method invention which they now claim in this reissue application." *Id.* at 560, 187 USPQ at 488 (emphasis in original).

Quoting from the patent specification, the court pointed out that the brief description therein of a method by which the patentees' tubing could be made showed on its face that the patentees regarded that method to be "in accordance with known practices" which would be "appreciated by those skilled in the art."

The court's conclusion was succinctly stated as follows:

> We agree with the board that there is nothing in the original patent evidencing that appellants intended to claim a method of making tubing or that appellants considered the method now claimed [in

the reissue application at bar] to be their invention.

*Id.,* 526 F.2d at 560, 187 USPQ at 489.

In *Mead,* the court upheld the denial of the reissue on the ground that the reissue was not being sought to correct an "error" in the original patent. The applicant's alleged "error" resulted from his conscious decision not to include claims corresponding to the reissue claims in the application for the original patent but to include them in a subsequent application. The court stated: "That intentional omission of the appealed subject matter from the original application combined with the plan to claim it in the subsequent application, does not constitute 'error' under § 251 . . . ." 581 F.2d at 257, 198 USPQ at 418.

The court considered "intent to claim" in connection with its rejection of the examiner's ruling that the claims in the reissue application were for a different invention than that covered in the original patent. The court discussed Supreme Court decisions dealing with such intent and concluded that " 'intent to claim' arose from the requirement that the reissue be for the 'same invention' as the original, i.e., that it cover what was 'intended to have been covered' by the original." *Id.* at 256, 198 USPQ at 417. The court stated:

> Thus, in *Rowand* and similar cases, "intent to claim" has little to do with "intent" *per se,* but rather is analogous to the requirement of § 112, first paragraph that the specification contain "a written description of the invention, and of the manner and process of making and using it." It is, as appellant urges, synonymous with "right to claim."

*Id.*

The Board also relied upon the following statement of the Supreme Court in *U.S. Industrial Chemicals, Inc. v. Carbide & Carbon Chemicals Corp.,* 315 U.S. 668, 676, 62 S.Ct. 839, 844, 86 L.Ed. 1105 (1942) (which was also quoted in *Mead* and discussed in *Rowand* ):

> And it is not enough that an invention might have been claimed in the original

patent because it was suggested or indicated in the specification. It must appear from the face of the instrument that what is covered by the reissue was intended to have been covered and secured by the original.

(Footnote omitted.)

As in *Rowand* and *Mead,* however, the issue before the Supreme Court was whether the reissue patent was for the same invention as the original patent. The Court pointed out that it was "plain that the reissue omitted a step in the process which was described and claimed as essential in the original patent," and concluded "that the reissue [was] not for the same invention described and claimed and intended to be secured by the original patent, and [was], therefore, void." *Id.* at 677, 681, 62 S.Ct. at 844, 846. The Court's reference to intent related solely to the same invention issue.

Although some of the foregoing judicial statements standing alone could be read to support the principle the Board here applied, those statements must be read in the light of the facts of the cases, the precise issues to be resolved therein, and the courts' holdings. *Armour & Co. v. Wantock,* 323 U.S. 126, 132–33, 65 S.Ct. 165, 168, 89 L.Ed. 118 (1944); *Sterling v. Constantin,* 287 U.S. 378, 400, 53 S.Ct. 190, 196, 77 L.Ed. 375 (1932); *In re Ruscetta,* 255 F.2d 687, 689, 45 Cust. & Pat.App. 968, 118 USPQ 101, 103 (1958). So read, the statements on which the Board relied do not support its decision.

█ In sum, lack of "intent to claim" is not an independent basis for denying a reissue application under section 251. It is only one factor that sheds light upon whether the claims of the reissue application are directed to the same invention as the original patent and the reissue would correct an inadvertent error in the original patent. Since the Board expressly refused to affirm the examiner's rejection of the reissue under section 251 based upon either of these grounds, but instead affirmed on the erroneous view that the lack of "intent to

claim" itself precludes a reissue, its decision denying the reissue cannot stand. In so holding, we neither express nor intimate any opinion on whether the reissue application complies with section 251.

The Commissioner has not argued that we should affirm the Board's decision based on grounds which the Board itself expressly declined to accept, and we see no need here to reach such issues *sua sponte*. Our reversal of the Board, of course, does not preclude it on remand from addressing those or other possible grounds of rejection that we have not considered (see *In re Clemens*, 622 F.2d 1029, 1039 n. 20, 206 USPQ 289, 299 n. 20 (Cust. & Pat.App.1980)), such as the one which the Commissioner urged upon us as discussed *infra*.

### III.

▪ The Commissioner's principal argument is not that the Board correctly denied the reissue on the "intent to claim" theory, but that the Board's decision rested upon a different ground. Pointing to the Board's statement that "[a]s a practical matter, appellant is seeking, in effect, a reissue of Patent No. 3,778,614 through the guise of a reissue of Patent No. 3,924,131," the Commissioner makes a detailed comparative analysis of the claims in the '614 patent and reissue claims 7 through 11. The Commissioner attempts to show that the reissue claims "are merely broadened variations of the claimed subject matter of the '614 patent, which could only be claimed in that patent by reissue filed on or prior to December 11, 1975." This argument refers to the provision in section 251 that "No reissued patent shall be granted enlarging the scope of the claims of the original patent unless applied for within two years from the grant of the original patent."

The statement of the Board upon which the Commissioner relies, however, was made in connection with the denial of the reissue under the "intent to claim" theory. The language immediately follows this statement:

It stretches credulity to urge that appellant filed a continuation-in-part application followed by a divisional application containing disclosure and objects of the invention differing from those of [the] application ... [for the '614 patent] with the intent of claiming an invention fully disclosed in [that] application ....

The Board's reference to an untimely attempt to procure a reissue of the '614 patent was merely a passing comment made in support of the Board's rationale, not the basis of its decision.

The Board's opinion cannot fairly be read as placing the decision upon the ground the Commissioner ascribes to it. We review the Board's decision on the basis of what the Board said, not on the basis of counsel's theory concerning what the Board really meant. The Supreme Court has admonished that "the integrity of the administrative process requires that 'courts may not accept appellate counsel's *post hoc* rationalizations for agency action ....'" *Burlington Truck Lines v. United States*, [371 U.S. 156,] 168 [83 S.Ct. 239, 246, 9 L.Ed.2d 207]; see. *Securities & Exchange Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 [67 S.Ct. 1575, 1577, 91 L.Ed. 1995]." *National Labor Relations Board v. Metropolitan Life Insurance Co.*, 380 U.S. 438, 444, 85 S.Ct. 1061, 1064, 13 L.Ed.2d 951 (1965).

The Commissioner's argument thus constitutes "what is tantamount to a new ground of rejection." *In re Armbruster*, 512 F.2d 676, 678 n. 2, 185 USPQ 152, 154 n. 2 (Cust. & Pat.App.1975). The Court of Customs and Patent Appeals frequently has rejected such attempts by the Commissioner "to apply a new rationale to support the rejection." *Id.* See also *In re Gyurik*, 596 F.2d 1012, 1017, 201 USPQ 552, 556–57 (Cust. & Pat.App.1979); *In re Corth*, 478 F.2d 1248, 1253, 178 USPQ 39, 42 (Cust. & Pat.App.1973). We decline to consider the Commissioner's argument that the reissue properly was denied because it was an attempt to obtain a reissue of the '614 patent more than two years after that patent issued.

The decision of the Board of Appeals is reversed.

REVERSED.