ROLITE, INC., Plaintiff,

v.

WHEELABRATOR TECHNOLOGIES, INC., Wheelabrator Environmental Systems, Inc., and WMX Technologies, Inc., Defendants.

Civ. A. No. 94–5894.

United States District Court, E.D. Pennsylvania.

Nov. 6, 1995.

Lindsey B. Slaughter, Kohn, Savett, Klein & Graf, P.C., Philadelphia, PA, Paul J. Scarlato, David H. Weinstein, Robert S. Kitchenoff, Weinstein Kitchenoff Scarlato & Goldman Ltd., Philadelphia, PA, for Plaintiff.

Robert D. Liebenberg, Mager, Liebenberg & White, Philadelphia, PA, Kenneth J. Rudofski, Kyle K. Kappes, Richard A. Clegg, Paul H. Berghoff, Allegretti and Witcoff, Ltd., Chicago, IL, for Defendants.

---

**1.** In the original Complaint, Rolite brought several other claims against WESI, Wheelabrator Technologies, Inc., and WMX Technologies, Inc., for damages and injunctive relief under the Clayton Act, Sherman Act, and Lanham Act and on various state law grounds. These are not at issue in Rolite's Motion for Partial Summary Judgment, and thus are not relevant to this order.

*MEMORANDUM*

ANITA B. BRODY, District Judge.

On September 27th, 1994, Plaintiff Rolite ("Rolite") brought a declaratory judgment action against Defendant Wheelabrator Environmental Systems Inc. ("WESI"), seeking to show non-infringement of WESI's patent and requesting injunctive relief.[1] On November 21, 1994, WESI filed a counterclaim on grounds of patent infringement.

On January 4th, 1995, Rolite filed a Motion for Partial Summary Judgment on the patent infringement issue. Rolite's motion is now under consideration, and for the following reasons, summary judgment[2] will be granted.

## I. SUMMARY OF FACTS

Both parties are involved in municipal waste management and operate systems for the conversion and recycling of ash residue from waste incinerators. The systems have various similarities: both systems screen ash residue waste, then combine the screened particles with stabilizing agents, such as concrete, to form aggregate which is then used for a variety of projects.

At issue in this matter is WESI's patent, United States Patent No. 4,804,147 ("the patent"), which requires "comminuting the ash residue to create an average particle size and a particle size distribution approximating that which is desired for the final aggregate". The parties disagree whether the patent applies to Rolite's process, and the central issue in this debate is whether the Rolite process "comminutes".

## II. DISCUSSION

### A. Standard for Summary Judgment

Rule 56(c) states that summary judgment is properly granted when there are no genuine issues of material fact and the moving

**2.** For the balance of this memorandum, when the term "summary judgment" is used, I am referring to partial summary judgment, as in Plaintiff's Motion for Partial Summary Judgment.

party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

■ In order to succeed on its Motion for Partial Summary Judgment, Rolite must show that there are no outstanding issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). For purposes of the summary judgment motion, Rolite admits practicing all steps of the patent except the "comminuting" step.[3] Therefore, the burden is on Rolite to demonstrate that there are no outstanding issues of material fact with regard to comminution.

If Rolite meets its evidentiary burden, then WESI must counter it by showing that there is enough material evidence to create an outstanding factual dispute which cannot be resolved by summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). WESI bears the burden of setting forth enough evidence which, if taken as true, establishes infringement by a preponderance of the evidence.

## B. Standard for Resolving Patent Disputes

■ In order to resolve claims of patent infringement, a court must first, as a matter of law, define all terms in the patent claim that are under dispute. Once claim interpretation is settled, the factfinder must then carefully scrutinize the accused device, in order to determine whether infringement has indeed occurred according to the established definitions. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed.Cir.1995), *cert. granted,* —— U.S. ——, 116 S.Ct. 40, 132 L.Ed.2d 921 (1995); *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 821 (Fed.Cir.1992).

### 1. Definition of Comminution

#### a. *Claim Terms and Ordinary Meaning*

■ In order to define the scope of the patent, claim language as it appears in the patent is controlling. "The threshold requirement in claim construction is an examination of the claim at issue". *McGill, Inc., v. John Zink Co.*, 736 F.2d 666, 672 (Fed.Cir. 1984), *cert. denied* 469 U.S. 1037, 105 S.Ct. 514, 83 L.Ed.2d 404 (1984). "[T]he scope of an invention is measured by the claims of the patent. 'Courts can neither broaden nor narrow the claims to give the patentee something different than what he has set forth. No matter how great the temptations ... courts do not rework claims. They only interpret them.'" *Max Daetwyler Corp. v. Input Graphics, Inc.*, 583 F.Supp. 446, 451 (E.D.Pa.1984), citing *Autogiro Co. of America v. United States*, 384 F.2d 391, 396 (Ct.Cl. 1967).

■ The terms of the claim should be given their ordinary and accustomed meaning.[4] *Intellicall, Inc. v. Phonometrics, Inc.*, 952 F.2d 1384, 1387 (Fed.Cir.1992); *Envirotech Corp. v. Al George, Inc.*, 730 F.2d 753, 759 (Fed.Cir.1984), citing *Universal Oil Products Co. v. Globe Oil & Refining Co.*, 137 F.2d 3, 6 (7th Cir.1943), *aff'd*, 322 U.S. 471, 64 S.Ct. 1110, 88 L.Ed. 1399 (1944). Claims should be interpreted as one skilled in the art would interpret them. *Moeller v. Ionetics, Inc.*, 794 F.2d 653, 657 (Fed.Cir. 1986); *Loctite Corp. v. Ultraseal Ltd.*, 781 F.2d 861, 867 (Fed.Cir.1985). If the inventor intends for the terms to be defined in a special or uncommon manner, such intent must be clearly indicated in the patent claim. *Markman*, 52 F.3d at 979; *Intellicall Inc.*, 952 F.2d at 1388, citing *Lear Siegler, Inc. v. Aeroquip Corp.*, 733 F.2d 881, 889 (Fed.Cir. 1984). Because WESI never indicated in the patent documents that the terms should be defined in a special way, the ordinary meaning of comminution should be adopted.

■ The common meaning of "comminution" is the reduction of particle size through

---

**3.** In order to prove patent infringement, the patentee must demonstrate that every step of patent claim is infringed upon, literally or under doctrine of equivalents. *Conroy v. Reebok Int'l Ltd.*, 14 F.3d 1570, 1573 (Fed.Cir.1994). Due to Rolite's admission, there is an assumption that every other step of the process is infringed upon; however, in order for literal infringement or the substantial equivalent to be proven, WESI must demonstrate infringement of the comminution step as well.

**4.** Dictionaries are a usual source for ascertaining ordinary meaning in patent disputes. Anthony W. Deller, 1 *Patent Claims* 48 (1971).

force. Common synonyms include "crushing", "grinding", and "pulverizing". These definitions appear in numerous authorities, including English-language dictionaries, chemical dictionaries, science texts and patent office publications.[5] Due to the overwhelming consistency in definition, it is safe to assume that any competitors in the field of ash conversion would interpret the patent in this way.

This definition of comminution is supported by the other language in the WESI patent. The claim requires "comminuting the ash residue to create an average particle size and particle size distribution ...". By using the term "create", the claim clearly indicates that comminution is an intentional act like crushing, grinding, and pulverizing.[6] The term "create" also indicates that the main goal of comminution is to form something new—namely to make smaller particles—which is also the goal of crushing, grinding and pulverizing.[7]

Therefore, the language of the claim[8] clearly indicates that comminution is a specific process geared at applying force to particles in order to reduce their size.

WESI argues that the ordinary meaning of comminution should not be adopted. WESI argues that comminution should instead be interpreted as any incidental or random disintegration of ash residue, or any elimination of larger particles. Under WESI's definition, the application of force is not a require-

ment, and therefore comminution can occur in passive processes like screening or transportation of ash residue.

Unlike Rolite, WESI does not provide any textual support for its position. WESI does not cite a single dictionary that provides such an unusual definition of comminution. The only publication that WESI refers to is that of the patent office, which actually fails to substantiate WESI's claim.[9]

WESI's main evidence for its definition of comminution is the opinion of the inventor of the patent, Mr. Hooper. Mr. Hooper argues that, despite his failure to record such intent in the patent itself, he used the term comminution to mean "screening, crushing, grinding, and any other operation that would ensure correctly sized ash residue for use in processing into aggregate". Mr. Hooper further states, "as a person of ordinary skill in the art, I believe that other persons of ordinary skill in the art would understand that the term comminution, as used in my patent, can include a wide variety of methods for achieving the desired particle size distribution, including screening, and is not limited to crushing, grinding or shredding". Declaration of William F. Hooper ¶ 18.

■ An inventor's subsequent attempts to alter the definitions of claim terms should be afforded little weight. *White v. Dunbar,* 119 U.S. 47, 51–2, 7 S.Ct. 72, 74–5, 30 L.Ed. 303 (1886); *North American Vaccine v. American Cyanamid Co.,* 7 F.3d 1571, 1577 (Fed.

---

5. For example, the patent office cites synonyms for "comminution" that include "grinding" "milling" and "pulverization".

6. This language effectively destroys WESI's argument that comminution does not require the intentional breakdown of particles.

7. Rolite's process screens—it does not "create" newly-sized particles, but instead allows most of the smaller pieces to retain their original size.

8. I choose not to comment on the rest of the language of the claim (i.e. "... an average particle size and particle size distribution approximating that which is desired for the final aggregate"). The language is so vague ("average" "approximating") that it does not help to resolve the dispute over the definition. Under either WESI's definition or Rolite's definition, it could be argued that comminution results in particles

of average size which can be used to make aggregate.

9. As discussed earlier, the patent office identifies "grinding", "milling" and "pulverizing" as synonyms for comminution.

WESI tries to use the patent office definition to argue that screening is a form of comminuting, since the patent office recognizes that some screens may be considered comminutors if their essential function is to crush. Rolite's screens serve the essential function of "remov[ing] foreign particles from the material", and thus clearly are excluded from the category of comminuting screens, under the patent office classification scheme. See Patent Office Classification Definitions 241–7 (December 1994).

Thus, although WESI attempts to argue that the patent office definition supports its position, upon closer look it becomes clear that the patent office actually contradicts WESI's claims.

Cir.1993), *cert. denied* —— U.S. ——, 114 S.Ct. 1645, 128 L.Ed.2d 365 (1994); *Senmed, Inc. v. Richard–Allan Medical Indus. Inc.*, 888 F.2d 815, 819 n. 8 (Fed.Cir.1989). Therefore, in the case at bar, I have complete discretion to discount Mr. Hooper's claims. I choose to exercise this discretion.[10]

WESI also cites the opinion of an expert, Dr. Gress, who argues that persons in the field of ash conversion "would understand the term comminution, in the context of Mr. Hooper's invention, to include any step that eliminates large particles from the ash residue to provide ash that is appropriately sized for conversion into aggregate". Declaration of David Lee Gress ¶ 7. Extrinsic evidence, such as Dr. Gress' testimony, may be used to aid the interpretation of claim terms; however, use of such evidence is discretionary, since it "amounts to no more than legal opinion [and] ... is precisely the process of construction that the court must undertake". *Markman*, 52 F.3d at 983.[11]

■■■■ Dr. Gress' testimony is not necessary nor helpful.[12] His opinion serves only to contradict the ordinary meaning of the term as it appears in the patent itself. A court is forbidden from considering extrinsic evidence that alters the meaning of claim terms as they appear in the patent docu-ments. *U.S. Indus. Chems., Inc. v. Carbide & Carbon Chems. Corp.*, 315 U.S. 668, 678, 62 S.Ct. 839, 844, 86 L.Ed. 1105 (1942); *Markman*, 52 F.3d at 981. For this reason, I afford little weight to Dr. Gress' opinions.[13]

b. *Prosecution History and Prior Art*

■■■■ In resolving disputes over definitions of claim terms, courts can refer to the patent history and specification of the patent, otherwise known as prosecution history, for further insight. *SmithKline Diagnostics, Inc. v. Helena Labs. Corp.*, 859 F.2d 878, 882 (Fed.Cir.1988); *Moeller*, 794 F.2d at 656; *Loctite Corp.*, 781 F.2d at 867. The prosecution history of the WESI patent serves as further proof that comminution should be interpreted according to its ordinary meaning. The description and diagrams contained within the patent documents clearly indicate that comminution is a distinct process that forcefully breaks up ash particles. The diagrams show comminution occurring in a "crusher", lending further support to the notion that comminuting means crushing.[14] The description and diagrams clearly show that screening and comminution are two entirely separate processes—thus demonstrating that ash disintegration in screening is viewed as a completely separate phenomena from ash comminution.

10. Note that if Mr. Hooper had indeed intended to patent any reduction in particle size, he should have (and probably would have) said so, rather than using a technical term like comminution. Furthermore, the existence of prior art indicates that if Mr. Hooper has intended such a definition, his patent may well have been invalid. See Section III B(1)(b) "Prosecution History and Prior Art", infra.

Even if I did not discount Mr. Hooper's testimony, it would not serve as a basis upon which to deny summary judgment. "[W]here a disputed term would be understood to have its ordinary meaning by one of skill in the art from the patent and its history, extrinsic evidence that the inventor may have subjectively intended a different meaning does not preclude summary judgment. In such instance, there is no genuine dispute respecting a material fact". *Intellicall, Inc.*, 952 F.2d at 1387.

11. It continues, "Thus, as to these types of opinions, the court has complete discretion to adopt the expert legal opinion as its own, to find guidance from it, or to ignore it entirely, or even exclude it". *Id.*

12. Functionally, it does little more than contradict the view of another expert, Mr. Roberts, President of Rolite, who argues that the ordinary meaning of comminution should be adopted. "[I]t is my opinion that 'comminuting' does not have a special technical meaning in the incinerator ash processing arts. I believe one of ordinary skill in the incinerator ash processing and aggregate production arts would understand 'comminuting' as used in the claims of the '147 Patent, in its ordinary sense". Reply Declaration of William A. Roberts in Support of Plaintiff's Motion for Partial Summary Judgment ¶ 1, 2.

13. Even if full weight were to be given to Dr. Gress' testimony, it would not prevent the granting of summary judgment. Any disagreement between experts or dispute over meaning of a term does not create a question of fact. *Markman*, 52 F.3d at 983; *Becton Dickinson & Co. v. C.R. Bard, Inc.*, 922 F.2d 792, 797 (Fed.Cir. 1990).

14. Comminution does not have to take place in a crusher, but can be performed by any machine that forcefully breaks up particles.

An analysis of prior art lends further support to the definition of comminution as crushing. Evidence shows that, prior to the WESI patent, several ash conversion processes were already patented—none of which contained a comminuting step, but all of which involved some degree of ash disintegration. Therefore, in obtaining a patent, WESI could not patent the common phenomena of ash disintegration, but could clearly patent its new addition to the process—the forceful breakup of ash particles, or comminution.[15] In light of this prior art, any argument that comminution includes random disintegration is effectively destroyed. Comminution in the WESI process is a very precise process. WESI can't escape this reality.

### c. Summary

As the claim language and prosecution history make clear, the term "comminution", as used in the WESI patent, can be defined as "crushing", "pulverizing", or "grinding". Armed with this definition, I now turn to the issue of infringement.

## 2. Is There Infringement?

### a. Literal Infringement

■ WESI provides no evidence that Rolite comminutes, under the definition of comminution established here. After extensive discovery, WESI provides detailed information about how particles of ash may randomly disintegrate at various stages of the Rolite process—but WESI never offers evidence that Rolite ever crushes ash. The photographs provided as evidence by WESI lend further support to the notion that the Rolite process does not comminute. The pictures show that ash clumps are shaken to fall through screens—there is no evidence of any forceful breakup of ash particles. At most, there is evidence of separation through vibration—certainly no crushing or comminution of any sort.

In its brief, WESI never argues that Rolite's process meets my findings as to the definition of the patent. Rather, WESI as-sumes that I will adopt its unusual definition of comminution, and presents its evidence accordingly. It is possible that if I did agree to adopt their faulty definition, WESI may have survived the summary judgment motion. However, the reality is that WESI failed to provide any evidence that Rolite comminutes under the established definition of comminution. Therefore, there is no evidence of literal infringement.

### b. Doctrine of Equivalents

■ A product may infringe if it "performs substantially the same function in substantially the same way to obtain the same result". *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950), citing *Sanitary Refrigerator Co. v. Winters*, 280 U.S. 30, 42, 50 S.Ct. 9, 13, 74 L.Ed. 147 (1929). In order to determine whether infringement occurs under the doctrine of equivalents, WESI must provide some evidence that another step in Rolite's process performs substantially the same function as comminution, in a similar way, to obtain the same result. WESI never does this under the proper definition of comminution. Random disintegration during screening (or during the entire ash conversion process) is not the functional equivalent of comminution. There is no evidence of a procedure "substantially the same" as crushing at any stage of Rolite's process. Therefore, WESI is unable to support any infringement claim on the grounds of equivalents.

## III. CONCLUSION

After reviewing the evidence, I find that Rolite satisfies the threshold requirement for summary judgment. Rolite provides ample evidence to demonstrate that its system does not contain any step in which comminution occurs.

I find that WESI has failed to present a case to survive summary judgment. Although there is sufficient evidence that Rol-

---

15. This is supported by the claim language, which begins with a description of the comminution step. WESI attempts to sidestep this and claim that because the patent contains a descrip-tion of the entire ash conversion process, the patent extends beyond the claim language. This is clearly untrue.

ite's process may break down ash, WESI fails to show that Rolite comminutes, under the established definition of comminution. Without providing evidence of comminution, WESI fails to carry its burden. A reasonable jury could not find that patent infringement occurred in this case, and thus summary judgment must be granted.

As indicated in the attached order, I grant Plaintiff Rolite's Motion for Partial Summary Judgment.